# IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

| | |
|---|---|
| THE GREAT TENNESSEE PIZZA COMPANY, INC., a Tennessee corporation; BRYAN HAMILTON, a resident of Knox County, Tennessee; and PETER D'ANDREA, a resident of the State of North Carolina, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN TELEPHONE AND TELEGRAPH COMPANY, a Delaware corporation doing business in Tennessee; CISCO, INC., a Texas corporation doing business in Tennessee; ALLIANT LAW GROUP, P.C., a California professional corporation doing business in Tennessee; <br><br> Defendants, | ) ) ) ) ) ) ) ) ) ) ) ) No. 177238-3 ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT

Come the Plaintiffs, The Great Tennessee Pizza Company, LLC, Bryan Hamilton, individually, and Peter D'Andrea, individually, and for their Complaint, would respectfully show to this honorable Court as follows:

### Jurisdiction and Venue

1. This Court has concurrent jurisdiction over causes of action based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA"), pursuant to 15 U.S.C. § 1692k(d).

2. This Court has jurisdiction over causes of action based on the Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. § 47-18-101, et seq. (the "TCPA") pursuant to Tenn. Code Ann. § 47-18-109(a)(2).

EXHIBIT 1

3. Venue is proper in Knox County, Tennessee, because:

   a. Plaintiff, The Great Tennessee Pizza Company, Inc., is a Tennessee corporation which operates three restaurants in Knox County, Tennessee;

   b. Plaintiff, Bryan Hamilton, is a resident of Knox County, Tennessee, and works in Knox County, Tennessee;

   c. Plaintiff, Peter D'Andrea, works primarily in Knox County, Tennessee; and

   d. The acts complained of in this Complaint occurred primarily by telephone contact initiated by agents of the Defendants to individuals in Knox County, Tennessee.

## Parties

4. Plaintiff, The Great Tennessee Pizza Company, Inc., is a Tennessee corporation doing business in Knox County, Tennessee.

5. Plaintiff, Bryan Hamilton, is a resident of Knox County, Tennessee, and a shareholder in The Great Tennessee Pizza Company, Inc.

6. Plaintiff, Peter D'Andrea, is a resident of the State of North Carolina and a shareholder in The Great Tennessee Pizza Company, Inc.

7. Defendant, American Telephone and Telegraph Company ("AT&T") is a Delaware corporation registered to do business in Tennessee and may be served with process through its registered agent, CT Corporation System, 800 S. Gay St., Ste. 2021, Knoxville, TN 37929.

8. Upon information and belief, Defendant, Cisco, Inc., ("Cisco") is a Texas

corporation which may served with process through its CEO, R. Ken Turner, at 1702 Townhurst Drive, Houston, TX 77043.

9. Upon information and belief, Defendant, Alliant Law Group, P.C., ("Alliant") is a California professional corporation which may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service, at 2730 Gateway Oaks Drive, Suite 100, Sacramento, CA 95833, or at its headquarters, 2860 Zanker Road, Suite 105, San Jose, CA 95134.

## Facts

10. Mr. D'Andrea is a North Carolina resident who was formerly employed by a group of entities owned by Tom Wallace.

11. These entities, known as Alexander & Wallace Enterprises, Inc., Patton & Alexander, Inc., and Gulf Shores Pizza, Inc. (collectively the "Wallace Companies"), operated more than a dozen Domino's Pizza franchises across the Southeastern United States.

12. While employed by the Wallace Companies, Mr. D'Andrea served as Director of Operations for all three companies, and he was listed as the contact person for a number of business contracts, including telephone and internet service contracts with Defendant, AT&T.

13. Mr. D'Andrea did not hold an ownership interest in any of the Wallace Companies.

14. Mr. D'Andrea was not a member of the Board of Directors of any of the Wallace Companies.

3

15. In 2008, the Wallace Companies experienced financial difficulty, and the assets of these businesses were repossessed by lenders who held security interests in those assets.

16. In November of 2008, Mr. Hamilton and Mr. D'Andrea formed The Great Tennessee Pizza Company, Inc.

17. In an arm's-length transaction with the lenders who foreclosed upon the Wallace Companies, the Great Tennessee Pizza Company, Inc. ("Plaintiff") purchased the assets of four restaurants formerly owned by the Wallace Companies, including restaurant equipment and other personal property.

18. Plaintiff commenced operating Domino's Pizza franchise restaurants at the locations formerly operated by the Wallace Companies in early 2009.

19. Three of Plaintiff's restaurants are located in Knox County, including the following locations: 5420 Pleasant Ridge Rd., Knoxville (the "Pleasant Ridge Store"); 900 North Broadway, Knoxville (the "Broadway Store"); and 2104 Cumberland Avenue, Knoxville (the "UT Store") (collectively the "Knoxville Stores").

20. Plaintiff retained the telephone numbers in existence at the Knoxville Stores (for which the Wallace Stores were the previous account holders).

21. However, Plaintiff signed new contracts with AT&T for telephone and internet service.

22. AT&T also assigned Plaintiff new account numbers, which were different than the account numbers formerly held by the Wallace Companies.

23. Upon information and belief, the Wallace Companies did not pay their bills to AT&T in full before ceasing operations, thus leaving their AT&T accounts with past due

4

balances (the "Wallace Debt").

## Count I: Violations of the FDCPA by Cisco and Alliant

24. Defendant AT&T is a "creditor" as defined by the FDCPA, 15 U.S.C. §1692a(4).

25. Defendants Cisco and Alliant (collectively the "Debt Collectors") are "debt collectors" as defined by the FDCPA, 15 U.S.C. §1692a(6).

26. Plaintiffs Mr. Hamilton and Mr. D'Andrea are "consumers" defined by the FDCPA, 15 U.S.C. §1692a(3).

27. Upon information and belief, AT&T contracted with various debt collectors, including Prince Parker & Associates, Financial Asset Management Systems, Cisco, and Alliant to collect the Wallace Debt.

28. Upon information and belief, AT&T provided the Debt Collectors with the names and phone numbers of Mr. D'Andrea, Mr. Hamilton, and the Knoxville Stores as contacts to use in collecting the Wallace Debt and directed them to contact these individuals and telephone numbers in its collection efforts.

29. In their attempts to collect the Wallace Debt, the Debt Collectors repeatedly contacted and harassed Mr. D'Andrea on his personal cell phone, his home telephone, and at the Knoxville Stores.

30. Mr. D'Andrea repeatedly explained to the Debt Collectors that he was not legally responsible for the Wallace Debt and asked them to stop calling him.

31. The Debt Collectors continued to call and harass Mr. D'Andrea.

32. Mr. D'Andrea also repeatedly asked the Debt Collectors to speak with his

5

attorney instead of him, but the Debt Collectors continued to call and harass Mr. D'Andrea.

33. Plaintiffs' legal counsel sent numerous "cease and desist letters" to AT&T and the Debt Collectors.

34. Cease and desist letters were mailed to three AT&T offices, including the corporation's regional headquarters in Atlanta, Georgia, on May 11, 2009. Copies of these letters are attached hereto and incorporated herein as <u>Exhibit A</u>.

35. A cease and desist letter was faxed to Ms. Gwen Blair, a collection agent at Cisco, on June 24, 2009, following a conversation between Plaintiffs' counsel and Ms. Blair regarding Plaintiffs' lack of liability for the Wallace Debt. A copy of this letter is attached hereto and incorporated herein as <u>Exhibit B</u>.

36. Despite these cease and desist letters and repeated conversations between Plaintiffs' counsel and AT&T and the Debt Collectors regarding the harassing and inappropriate phone calls, the Plaintiffs continued to receive collection calls regarding the Wallace Debt.

37. A second set of cease and desist letters were mailed to three AT&T offices (including AT&T's registered agent), on August 10, 2009. Copies of these letters are attached hereto and incorporated herein as <u>Exhibit C</u>.

38. On September 22, 2009, Plaintiff's counsel received a fax cover sheet from AT&T requesting the account numbers at issue.

39. Plaintiff's counsel responded to this message by facsimile dated September 25, 2009. A copy of this letter (with enclosures) is attached hereto and incorporated herein as <u>Exhibit D</u>.

40. On that same date, Plaintiff's counsel mailed a second cease and desist

letter to Cisco. A copy of this letter is attached hereto and incorporated herein as <u>Exhibit E</u>.

41. On September 30, 2009, Cisco Chief Executive Officer R. Ken Turner e-mailed Plaintiffs' counsel to confirm that Mr. D'Andrea would not be contacted any further regarding the Wallace Debt. A copy of this message is attached hereto and incorporated herein as <u>Exhibit F</u>.

42. In spite of that assurance, Plaintiffs have continued to receive calls from Cisco collectors and other Debt Collectors hired by AT&T to collect the Wallace Debt.

43. On January 14, 2010, Plaintiffs' counsel sent a cease and desist letter to Alliant. A copy of this letter is attached hereto and incorporated herein as <u>Exhibit G</u>.

44. Alliant acknowledged receipt of the e-mailed version of the cease and desist letter but failed to take further action to remedy the situation.

45. In spite of the cease and desist letters, the Debt Collectors continued to call and harass Mr. D'Andrea.

46. In their attempts to collect the Wallace Debt, the Debt Collectors also repeatedly contacted and harassed Mr. Hamilton and employees of the Knoxville Stores.

47. In their conversations with Mr. Hamilton and employees of the Knoxville Stores, the Debt Collectors accused Mr. Hamilton and Mr. D'Andrea of willfully failing to pay their bills (despite the fact that they were not legally responsible for the Wallace Debt) and told employees of the Knoxville Stores that their bosses were not paying their bills.

48. Mr. Hamilton also instructed the Debt Collectors that he and the other Plaintiffs were not responsible for the Wallace Debt and requested that the Debt Collectors stop calling him and the Knoxville Stores, to no avail.

49. The Debt Collectors' statements regarding their "boss", The Great Tennessee

Pizza Co., Inc., and Mr. D'Andrea and Mr. Hamilton, caused considerable distress, confusion, and ill will among the numerous employees who spoke with the Debt Collectors.

50. In their attempts to collect the Wallace Debt, the Debt Collectors also repeatedly contacted and harassed family members of Mr. D'Andrea at the D'Andrea residence, including Mr. D'Andrea's wife and his minor daughter, who had no affiliation with the Wallace Stores.

51. Cisco and Alliant collectors repeatedly telephoned Mr. D'Andrea and Mrs. D'Andrea, calling them deadbeats and threatening to ruin their credit.

52. During one conversation, a Cisco collector told Mr. D'Andrea's 16-year-old daughter that her father "had a bunch of unpaid phone bills and that he needed to call and get it straightened out right away."

53. As a direct and proximate result of the Debt Collectors' wrongful and harassing phone calls to Mr. D'Andrea and his family, Mr. Hamilton, and the employees of the Knoxville stores, Plaintiffs Mr. D'Andrea and Mr. Hamilton have suffered actual damages in the form of emotional distress, anger, anxiety, worry, and frustration, as well as legal fees and emotional strain within their relationships with employees and family members.

54. The foregoing acts of the Debt Collectors constitute numerous and multiple violations of the FDCPA, including, but not limited to: 15 U.S.C. § 1692b(1), (2), (3) and (6); 15 U.S.C. § 1692c(a) and (c); 15 U.S.C. § 1692d; and 15 U.S.C. § 1692e(2), (5), (8), and (10).

55. As a result of Cisco's violations of the FDCPA, Plaintiff Mr. D'Andrea is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages in an

amount not exceeding $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

56. As a result of Cisco's violations of the FDCPA, Plaintiff Mr. Hamilton is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages in an amount not exceeding $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

57. As a result of Alliant's violations of the FDCPA, Plaintiff Mr. D'Andrea is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages in an amount not exceeding $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

58. As a result of Alliant's violations of the FDCPA, Plaintiff Mr. Hamilton is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages in an amount not exceeding $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## Count II: Slander of Plaintiffs by the Debt Collectors

59. The foregoing assertions of this Complaint are incorporated herein as if particularly set forth.

60. By telling numerous employees of Plaintiff, The Great Tennessee Pizza Co., Inc., that Plaintiff and its shareholders, Plaintiffs Mr. D'Andrea and Mr. Hamilton, did not pay their bills, the Debt Collectors published false and defamatory statements regarding the Plaintiffs with reckless disregard for the truth of the statements or with negligence in failing to ascertain the truth of the statements.

61. The acts of the Debt Collectors constituted acts of slander against all Plaintiffs.

### Count III: Violations of the Tennessee Consumer Protection Act of 1977 by AT&T and the Debt Collectors

62. The foregoing assertions of this Complaint are incorporated herein as if particularly set forth.

63. The Debt Collectors' false statements to employees of Plaintiffs about the liability of The Great Tennessee Pizza Company, Inc., Mr. D'Andrea, and Mr. Hamilton for the Wallace Debts and their alleged willful failure to pay same constitute violations of Tenn. Code Ann. § 47-18-104(8) of the Tennessee Consumer Protection Act of 1977.

64. The Debt Collectors were acting as agents of AT&T in their attempts to collect the Wallace Debt by disparaging Plaintiffs' personal and business activities; as a result, AT&T is liable for the Debt Collectors' violations of the TCPA.

65. AT&T entered into new contracts for telephone and internet service with The Great Tennessee Pizza Company, Inc., (the "Contracts") at the rates established in the Contracts.

66. The Great Tennessee Pizza Company, Inc. performed all of its requirements under the Contracts as necessary, including payment of its bills in a timely manner, to maintain telephone and internet service.

67. AT&T, however, attempted to collect additional amounts from Plaintiffs for the same services, which sums were in excess of the stated contract amounts.

68. AT&T also wrongfully disconnected telephone and internet service at Plaintiff's stores on at least four (4) separate occasions, as indicated in a letter from

10
Case 3:10-cv-00151   Document 1-1   Filed 04/09/10   Page 10 of 17

Plaintiff, Mr. D'Andrea, to AT&T. A copy of this letter is attached hereto and incorporated herein as Exhibit H.

69. On February 19, 2009, AT&T disconnected Plaintiff's internet service at the Pleasant Ridge Store because, according to an AT&T customer service representative, Plaintiffs refused to pay their bill.

70. Further discussion with the AT&T employee revealed that the "bill" which was unpaid was the Wallace Debt, not any bill or account of Plaintiffs.

71. Because of the lack of internet service at the Pleasant Ridge store, Plaintiff was unable to process debit card and credit card orders for more than nine hours, resulting in considerable lost profits and damage to its goodwill and reputation with its customers.

72. AT&T's attempts to force Plaintiffs to pay the Wallace Debt in spite of the clear language of their Contracts and AT&T's deliberate interference with Plaintiff's business constitute unfair or deceptive acts in violation of the TCPA.

### Count IV: Breach of Contract

73. The foregoing assertions of this Complaint are incorporated herein as if particularly set forth.

74. AT&T's acts of deliberately denying Plaintiff telephone and internet service and overcharging Plaintiff for telephone and internet service in an attempt to collect the Wallace Debt also constitute breaches of its Contracts with The Great Tennessee Pizza Company, Inc.

## Count V: Tortious Interference with Business Relationships by the Debt Collectors

75. The foregoing assertions of this Complaint are incorporated herein as if particularly set forth.

76. The Debt Collectors intentionally called the Knoxville Stores and spoke with employees at each location regarding the Wallace Debt.

77. The Debt Collectors told the employees that Plaintiffs were not paying their bills and intended to injure Plaintiffs' business relationships with their employees.

78. Plaintiffs sustained damages from the Debt Collectors' interference, including wages paid to employees during the phone calls and lost work productivity while employees answered the Debt Collectors' phone calls, loss of employee morale due to the false statements regarding Plaintiff's financial situation, and lost profits resulting from the employees' inability to answer other phone calls from customers while talking with the Debt Collectors.

## Count VI: Tortious Interference with Business Relationships by AT&T

79. The foregoing assertions of this Complaint are incorporated herein as if particularly set forth.

80. AT&T is liable for the acts of its agents, the Debt Collectors, in interfering with Plaintiff's business relationships with its employees.

81. In addition, AT&T has wrongfully disconnected Plaintiff's telephone and/or internet service at the Knoxville Stores on at least four (4) occasions since Plaintiff signed the Contracts.

82. On February 19, 2010, AT&T deliberately disconnected internet service to

one of Plaintiff's stores as punishment for Plaintiffs' refusal to pay the Wallace Debt.

83. AT&T knew or should have known that disconnecting phone and/or internet service would interfere with Plaintiff's pizza restaurant business.

84. During the times that AT&T suspended Plaintiff's telephone service, Plaintiff was unable to take telephone orders, which are the vast majority of Plaintiff's business.

85. During the times that AT&T suspended Plaintiff's internet service, Plaintiff was unable to process debit card and credit card orders, which are the primary source of payment by Plaintiff's customers.

86. AT&T's deliberate acts of disconnecting Plaintiff's telephone and internet service resulted in considerable lost profits and damage to its goodwill and reputation with people who would have purchased food and/or beverages from Plaintiff's store if the telephone and/or internet service had been operational.

87. Plaintiffs also incurred legal fees in its attempts to negotiate with AT&T to have the telephone and internet service restored.

88. AT&T actions in wrongfully disconnecting telephone and internet service to Plaintiff's stores constituted intentional interference with Plaintiff's business relationships with its customers.

Premises considered, Plaintiffs pray as follows:

1. That proper process issue and be served on Defendants, and that they be required to answer as required by law.

2. That the Court determine and decree that the Defendant, Cisco, Inc., has violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., and that Plaintiffs

Mr. D'Andrea and Mr. Hamilton each be awarded actual damages, statutory damages in the amount of $1,000.00, and attorney fees and costs.

3.  That the Court determine and decree that the Defendant, Alliant Law Group, P.C., has violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., and that Plaintiffs Mr. D'Andrea and Mr. Hamilton each be awarded actual damages, statutory damages in the amount of $1,000.00, and attorney fees and costs.

4.  That the Court determine and decree that the Defendants violated the Tennessee Consumer Protection Act of 1977, and that Plaintiffs be awarded treble damages and attorney fees and costs as provided by Tenn. Code Ann. § 47-18-109.

5.  That the Court determine and decree that the Defendants, Cisco and Alliant, committed slander by repeatedly telling Plaintiff's employees that the company and its owners were not paying their bills.

6.  That the Court determine and decree that the Defendants, Cisco and Alliant, tortiously interfered with the business of Plaintiff, The Great Tennessee Pizza Company, Inc., by repeatedly telling Plaintiff's employees that the company and its owners were not paying their bills.

7.  That the Court determine and decree that the Defendant, AT&T, tortiously interfered with the business of Plaintiff, The Great Tennessee Pizza Company, Inc., and breached its Contracts with Plaintiff by disconnecting service to Plaintiff's stores based on non-payment of the Wallace Debt and by hiring the Debt Collectors who harassed employees of Plaintiff at the Knoxville Stores, and that Plaintiff be permitted to rescind or cancel all of its contracts with AT&T immediately without incurring a fee or penalty for same.

8. That Judgment be granted in favor of the Plaintiffs and against the Defendants for damages for the above claims in an amount to be established at trial and for the additional relief as requested herein.

9. That the costs of the cause, including all discretionary costs, be taxed to the Defendants, for which execution may issue if necessary.

10. For any further relief to which this Court may find Plaintiffs entitled.

Respectfully submitted this 3rd day of March, 2010.

THE GREAT TENNESSEE PIZZA COMPANY, INC.

By: _____

Its: _____

PETER D'ANDREA

_____

BRYAN HAMILTON

_____

WISE & REEVES, P.C.

BY: _____
Robin M. Cleavenger, BPR #025322
William A. Reeves, BPR #005343
Attorneys for Plaintiffs
625 S. Gay St., Ste. 160
Knoxville, TN 37902
(865) 544-1199

STATE OF TENNESSEE  )
COUNTY OF KNOX     )

Personally appeared before me, a Notary Public in and for said State and County, __Peter D'Andrea__, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself to be __President__ of THE GREAT TENNESSEE PIZZA COMPANY, INC., and that he, as such officer of said entity, being authorized to do, signed, sealed and delivered the foregoing instrument in my presence for the purposes therein contained as his free act and deed, by signing the name of the entity by himself as such officer.

Witness my hand and official seal at office in Knox County, Tennessee, this 3rd day of March, 2010.

_____
NOTARY PUBLIC

My Commission Expires:
1/30/13

STATE OF TENNESSEE  )
COUNTY OF KNOX     )

PETER D'ANDREA, after first begin duly sworn according to law, makes oath that he has read the foregoing Complaint, that the facts set forth therein are true to the best of his knowledge, information, and belief, and that this Complaint is not made out of levity or by collusion with the defendants, but in sincerity and truth for causes mentions therein.

_____
Peter D'Andrea

Sworn and subscribed before me this 3rd day of March, 2010.

_____
NOTARY PUBLIC

My Commission Expires:
1/30/13

16

Case 3:10-cv-00151   Document 1-1   Filed 04/09/10   Page 16 of 17

STATE OF TENNESSEE )
COUNTY OF KNOX )

BRYAN HAMILTON, after first begin duly sworn according to law, makes oath that he has read the foregoing Complaint, that the facts set forth therein are true to the best of his knowledge, information, and belief, and that this Complaint is not made out of levity or by collusion with the defendants, but in sincerity and truth for causes mentions therein.

_____
Bryan Hamilton

Sworn and subscribed before me this 3rd day of March, 2010.

_____
NOTARY PUBLIC

My Commission Expires: 11/30/13

[Notary Seal: CORLEY HARRIS, STATE OF TENNESSEE NOTARY PUBLIC, KNOX COUNTY]

## COST BOND

We, the undersigned, do hereby acknowledge ourselves as surety for all costs in this cause in accordance with Tenn. Code Ann. § 20-12-120.

WISE & REEVES, P. C.

By _____
Robin M. Cleavenger