# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| THE GREAT TENN. PIZZA CO., INC., ) | |
| BRYAN HAMILTON, and PETER D'ANDREA,) | |
| ) | |
|      Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:10-CV-151 |
| ) | (Phillips) |
| BELLSOUTH TELECOMM., INC., ) | |
| ) | |
|      Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the following motions:

- Plaintiffs' Motion for a Hearing Regarding the Motion to Remand [Doc. 52];

- Plaintiffs' Motion to Remand [Doc. 48];

- BellSouth Telecommunications, Inc.'s Motion to Strike [Doc. 44];

- BellSouth Telecommunications, Inc.'s Motion for Judgment on the Pleadings [Doc. 39]; and

- BellSouth Telecommunications, Inc.'s Motion to Dismiss [Doc. 51].

On March 3, 2010, Plaintiffs filed this lawsuit in the Knox County Chancery Court, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* [Plaintiffs' Original Complaint, Doc. 1-1]. Plaintiffs also alleged various state law claims, including breach of contract and violations of the Tennessee Consumer Protection Act of 1977 ("TCPA"), T.C.A. § 47-18-101 *et seq.* [Id.]. The original complaint was filed against American Telephone and Telegraph Company ("American Telephone"), Cisco, Inc. ("Cisco"), and the Alliant Law Group,

1

P.C. ("Alliant").  [Id.].

On April 9, 2010, the action was removed to federal court.  [Notice of Removal, Doc. 1].
In its Notice of Removal [Doc. 1], Cisco asserted that the Court had subject-matter jurisdiction over
Plaintiffs' FDCPA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).  [Id.].  Cisco also
asserted that the Court had diversity jurisdiction over the state law claims pursuant to 28 U.S.C. §
1332.[1]  [Id.].

Since the case was removed to federal court, Plaintiffs have dismissed their claims against
Alliant [Doc. 38] and Cisco [Doc. 47].  Plaintiffs have also substituted "BellSouth
Telecommunications, Inc., d/b/a AT&T Tennessee"[2] ("BellSouth") in place of American Telephone.
[Plaintiffs' Amended Complaint, Doc. 10, at 2, ¶ 7].  This leaves BellSouth as the only remaining
defendant in this case.  Plaintiffs have only asserted state law claims against BellSouth.

In their Motion to Remand [Doc. 48], Plaintiffs request that the Court decline to exercise
supplemental jurisdiction over Plaintiffs' remaining state law claims against BellSouth.  In the Sixth
Circuit, courts generally will not exercise supplemental jurisdiction over an action when jurisdiction
was based upon 28 U.S.C. § 1331 ("federal question" jurisdiction), and all federal claims have been
dismissed.  In response, BellSouth asserts that the Court also had "diversity" jurisdiction over this
action, 28 U.S.C. § 1332, at the time of removal.  [BellSouth's Response to Plaintiffs' Motion to

---

[1] Alternatively, Cisco asserted  that the Court has supplemental jurisdiction over the state law
claims pursuant to 28 U.S.C. § 1367.  As Cisco stated: "In the event it may later be determined this Court
lacks original jurisdiction over the Plaintiffs' state law statutory and common law claims pursuant to 28
U.S.C. § 1332, this Court nonetheless would have supplemental jurisdiction over those claims pursuant to
28 U.S.C. § 1367."  [Notice of Removal, Doc. 1, at 2, ¶ 7].

[2] In the Amended Complaint [Doc. 10], Plaintiffs refer to BellSouth as "BellSouth
Telecommunications, Inc. d/b/a AT&T Tennessee," which is a "Georgia corporation registered to do
business in Tennessee . . ."  [Plaintiffs' Amended Complaint, Doc. 10, at 2].  For the sake of brevity, the
Court refers to this defendant as "BellSouth."

Remand, Doc. 50]. Each party agrees that there was complete diversity of citizenship at the time of removal. The issue is whether the Defendants have shown–at least one of the Plaintiffs–that the amount-in-controversy exceeded $75,000, independent of interest and costs, at the time of removal. The *ad damnum* clause in the Original Complaint [Doc. 1-1] does not request a specific amount in damages. Thus, the Court must first determine whether it is "facially apparent" from the Original Complaint [Doc. 1-1] that the amount-in-controversy requirement was satisfied for at least one of the Plaintiffs at the time of removal.[3] If it is not facially apparent that the amount-in-controversy requirement was satisfied, then BellSouth must show by a preponderance of the evidence–that is, "more likely than not"–that the amount-in-controversy was satisfied. Under those circumstances, BellSouth could rely on documents and evidence submitted after the Original Complaint [Doc. 1-1].

If the Court finds that it does not have diversity jurisdiction over this action, then it will not exercise supplemental jurisdiction over the remaining state law claims. However, if the Court finds that it has diversity jurisdiction over this action, then it will address the merits of BellSouth's Motion for Judgment on the Pleadings [Doc. 39] and its Motion to Dismiss [Doc. 51].

Based upon the following, the Court makes the following rulings:

- ■ Plaintiffs' Motion for a Hearing Regarding the Motion to Remand [Doc. 52] is **DENIED**.

- ■ Plaintiffs' Motion to Remand [Doc. 48] is **DENIED.**

- ■ BellSouth's Motion to Strike [Doc. 44] is **DENIED**.

---

[3] Upon removal, it is always the defendant's burden to prove that subject-matter jurisdiction exists. *See* <u>Everett v. Verizon Wireless, Inc.</u>, 460 F.3d 818, 822 (6th Cir. 2006). The defendant must first address whether it is "facially apparent" that the amount-in-controversy requirement was satisfied at the time of removal. <u>Id.</u> If it is not "facially apparent," then it is the defendant's burden to provide evidence showing that–at the time of removal–it was "more likely than not" that the amount-in-controversy for at least one of the plaintiffs exceeded $75,000, exclusive of interest and costs. <u>Id.</u>

- BellSouth's Motion for Judgment on the Pleadings [Doc. 39] and its Motion to Dismiss [Doc. 51] are **GRANTED**.  Accordingly, Counts I, II, V, and VI of the Amended Complaint [Doc. 10] are **DISMISSED**.  Count III is also dismissed, to the extent that Plaintiffs seek to hold BellSouth liable for alleged actions or conduct by Alliant Law Group, P.C., or Cisco, Inc.

## I.    ANALYSIS

### A.    Plaintiffs' Motion for a Hearing Regarding the Motion to Remand  [Doc. 52]

In their Motion for a Hearing [Doc. 52], Plaintiffs request oral argument to address their Motion to Remand [Doc. 48].  The Court will not grant Plaintiffs' Motion for a Hearing [Doc. 52].  The parties have sufficiently argued the merits of this motion, as reflected in their memoranda and responses.  No further argument is necessary.  Accordingly, Plaintiffs' Motion for a Hearing [Doc. 52] is **DENIED**.

### B.    Plaintiffs' Motion to Remand  [Doc. 48]

When subject-matter jurisdiction is not based upon diversity jurisdiction, and all federal claims have been dismissed, the policy in the Sixth Circuit is to dismiss all remaining state law claims.  *See* Brooks v. Rothe, 577 F.3d 701, 709 (6th Cir. 2009) ("If federal claims are dismissed before trial, the state claims generally should be dismissed as well.") (quoting Wojnicz v. Davis, 80 F. App'x. 382, 384-85 (6th Cir. 2003)).  In the Notice of Removal [Doc. 1], Cisco asserted that the Court had subject-matter jurisdiction on the basis of federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332.  At the time of removal, the Court clearly had jurisdiction over Plaintiffs' FDCPA claims pursuant to 28 U.S.C. § 1331.  Now that the Plaintiffs have dismissed their federal claims, the issue is whether the Court should remand this action to state court.  This depends upon whether the Court has diversity jurisdiction over the state law claims, 28

U.S.C. § 1332, or whether it has supplemental jurisdiction over the state law claims, 28 U.S.C. § 1367.

A federal district court has original jurisdiction over, *intera alia*, any civil action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and is between "citizens of different states." 28 U.S.C. § 1332(a). At the time of removal, there was complete diversity of citizenship between the parties. The issue, therefore, is whether the amount-in-controversy requirement was satisfied.

To satisfy the amount-in-controversy requirement, "at least one plaintiff's claim must *independently* meet the amount-in-controversy specification." Everett v. Verizon Wireless, Inc., 460 F.3d 818, 822 (6th Cir. 2006) (emphasis added) (citation omitted). As the Court of Appeals for the Sixth Circuit has stated,"[w]hile a single plaintiff may aggregate the value of her claims against a defendant to meet the amount-in-controversy requirement, even when those claims share nothing in common besides the identity of the parties, the same is not true with respect to multiple plaintiffs." Id. (citation omitted). There is an exception to this general rule, but it only applies when "two or more plaintiffs unite to enforce a single title or right in which they have a *common and undivided interest . . . .*" Id. (emphasis added) (quoting Snyder v. Harris, 394 U.S. 332, 335 (1969)). This exception–known as the "common fund" rule–usually involves "claims to a piece of land, a trust fund, an estate, an insurance policy, a lien, or an item of collateral, which they claim as common owners or in which they share a common interest arising under a single title or right." Everett, 460 F.3d at 824 (quotations and citations omitted). *See also* Sellers v. O'Connell, 701 F.2d 575, 579 (6th Cir. 1983) ("An identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are

increased."). Because there is not a common fund in this case, Plaintiffs' claims may not be aggregated with each other to satisfy the amount-in-controversy requirement.

The party seeking removal bears the burden of establishing jurisdiction. In this case, the defendants had the burden of showing that the amount-in-controversy requirement was satisfied at the time of removal. Gafford v. Gen. Elec. Co., 997 F.3d 150, 155 (6th Cir. 1993). Because jurisdiction is determined at the time of removal[4], the focus is on the state complaint.[5] Even though all of the defendants in the Original Complaint [Doc. 1-1] have been dismissed, the Court must ignore that fact and decide whether the amount-in-controversy requirement was satisfied for at least one of the Plaintiffs at the time of removal.

In the Original Complaint [Doc. 1-1]–as removed from state court–Plaintiffs did not request a specific amount in damages.[6] Under these circumstances, the Court of Appeals for the Sixth Circuit has provided the following guidance:

> Normally, the sum claimed by the plaintiff[s] controls, but where plaintiffs seek to recover some unspecified amount that is not self-

---

[4] *See, e.g.,* Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 375 (6th Cir. 2007) (recognizing that because "[j]urisdiction is determined at the time of removal . . . subsequent events, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached") (quotations and citations omitted).

[5] On June 22, 2010, Plaintiffs filed an Amended Complaint [Doc. 10]. In that complaint, Plaintiffs asserted that the Court has jurisdiction over the FDCPA claims pursuant to 15 U.S.C. § 1692k(d). Plaintiffs also asserted that the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Besides requesting $1,000 in statutory damages for Peter D'Andrea's and Bryan Hamilton's FDCPA claims, Plaintiffs did not request any specific amount in compensatory or punitive damages. [Plaintiffs' Amended Complaint, Doc. 10, at 13-14]. Because the vantage point for determining diversity jurisdiction was at the time of removal, and because the Amended Complaint [Doc. 10] was filed several months after the action was removed, the Court will not rely upon the Amended Complaint [Doc. 10] in its analysis.

[6] Besides requesting $1,000 in statutory damages for Peter D'Andrea's and Bryan Hamilton's FDCPA claims, Plaintiffs did not request any specific amount in compensatory or punitive damages. [Plaintiffs' Original Complaint, Doc. 1-1, at 13-14].

> evidently greater or less than the federal amount-in-controversy requirement, the defendant satisfies its burden when it proves that the amount in controversy *more likely than not exceeds $75,000.* In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal. *Claims present when a suit is removed but subsequently dismissed from the case thus enter into the amount-in-controversy calculation.*

Everett, 460 F.3d at 822 (6th Cir. 2006) (emphasis added) (citations and quotations omitted). The first issue to decide is whether the Defendants[7] have that it is "self-evident" that the amount-in-controversy requirement was satisfied at the time of removal. *See* Gafford, 997 F.2d at 158. *See also* Rotschi v. State Farm Mut. Auto Ins. Co., 114 F.3d 1188, at *4 (6th Cir. May 15, 1997) (unpublished table decision) (holding that courts should consider "whether it is *'facially apparent'* from the complaint that the damages are likely above" the amount-in-controversy requirement) (emphasis added).

Having reviewed the Original Complaint [Doc. 1-1], the Court finds that it is not "self-evident" or "facially apparent" that the amount-in-controversy was satisfied. With regard to their FDCPA claims, plaintiffs Peter D'Andrea ("Mr. D'Andrea") and Bryan Hamilton ("Mr. Hamilton") requested that they "each be awarded actual damages, statutory damages in the amount of $1,000.00, and attorney fees and costs." [Plaintiffs' Original Complaint, Doc. 1-1, at 14]. With regard to their TCPA claims, Plaintiffs requested that they be awarded "treble damages and attorney fees and costs as provided by Tenn. Code Ann. § 47-18-109." [Id.]. Based upon the Original Complaint [Doc. 1-1], it is not clear whether the amount-in-controversy requirement was satisfied for any of the

---

[7] The Court recognizes that all of the original Defendants in this case have been dismissed. However, in determining whether the Court has diversity jurisdiction over the state law claims, the Court must consider whether those Defendants offered any evidence to establish diversity jurisdiction. The Court will also consider any evidence offered by BellSouth, even though BellSouth was not a defendant at the time of removal.

Plaintiffs at the time of removal.

Because it is not "self-evident" whether the unspecified amount of damages in the Original Complaint [Doc. 1-1] exceeds the jurisdictional requirement, BellSouth must prove by a preponderance of the evidence that the amount-in-controversy was nonetheless satisfied. *See* Everett, 460 F.3d at 822. In deciding this issue, the Court is not limited to reviewing the Original Complaint [Doc. 1-1], or documents submitted prior to removal. In an unpublished decision, the Court of Appeals for the Sixth Circuit stated that "that the scope of damages, whose amount is not specified [in the state complaint] *may be developed through evidence submitted after the original complaint*, if jurisdiction is challenged at a later stage." Havener v. Richardson, 198 F.3d 245, at *2 (6th Cir. 1999) (unpublished table decision) (emphasis added). The question is what documents can the Court consider?

The approach adopted by the Court of Appeals for the Seventh Circuit provides the best answer. Harmon v. OKI Sys., 115 F.3d 477, 480 (7th Cir. 1997). In Harmon, the district court relied upon post-removal interrogatory answers to determine whether removal was proper. Id. The plaintiffs argued that district courts should be limited to evidence in the record when removal is sought, but the court of appeals rejected such standard. Id. Specifically, the court of appeals held that "[t]he test should simply be *whether the evidence sheds light on the situation which existed when the case was removed*." Id. (emphasis added). Under this approach–which is consistent with Sixth Circuit precedent–courts are not limited to evidence in the record at the time of removal. Id.


The Supreme Court addressed a similar issue in St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 293 (1938). In St. Paul Mercury, the Supreme Court considered whether a post-

removal amendment of a complaint would destroy diversity jurisdiction. Id. In that case, the damages alleged in the original (or state court) complaint were greater than the amount-in-controversy requirement for diversity jurisdiction. Id. However, the amended complaint that was filed after removal requested damages less than the amount-in-controversy requirement. Id. Despite the amended complaint, the Supreme Court held that the district court did not lose subject-matter jurisdiction. Id. Specifically, the Court held that the post-removal stipulation that attempted to *lower* the request for damages below the amount-in-controversy requirement, had no effect on the district court's jurisdiction:

> And though, as where, the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim *below the requisite amount*, this does not deprive the district court of jurisdiction. Thus, *events occurring subsequent to removal which reduce the amount recoverable*, whether beyond the plaintiff's control or the result of his violation, do not oust the district court's jurisdiction once it has attached.

Id. at 292-93 (emphasis added). The Court was particularly concerned with plaintiffs manipulating diversity jurisdiction:

> We think this well established rule is supported by ample reason. If the plaintiff could, no matter how bona fide his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice. The claim, whether well or ill founded in fact, fixes the right of the defendant to remove, and the plaintiff ought not to be able to defeat that right and bring the cause back to the state court at his election. If he does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.

Id. at 294. In light of the Supreme Court's decision in St. Paul Mercury, district courts may not consider post-removal stipulations by a plaintiff that seek to *lower* the amount-in-controversy below

the jurisdictional requirement.

Relying upon St. Paul Mercury, the Court of Appeals for the Sixth Circuit has held that post-removal stipulations by a plaintiff that seek to reduce the "*amount in controversy* to below the jurisdictional limit does not require remand to state court."  Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 872 (6th Cir. 2000).  As the Court of Appeals explained:

> Because jurisdiction is determined as of the time of removal, events occurring after removal that reduce the amount in controversy do not oust jurisdiction.  Therefore, consistent with St. Paul and previous unpublished Sixth Circuit opinions, we hold that a post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court.

Id.  Like the Supreme Court in St. Paul Mercury, the Court of Appeals in Rogers was concerned with the manipulation of diversity jurisdiction: "If plaintiffs were able to defeat jurisdiction by way of a post-removal stipulation, they could *unfairly manipulate proceedings* merely because their federal case begins to look unfavorable."  Id. (emphasis added).

Plaintiffs argue that at the time of removal, Cisco (which filed the Notice of Removal, Doc. 1) did not establish that the amount-in-controversy was satisfied.  [Plaintiffs' Motion to Remand, Doc. 48, at 2].  While Cisco failed to explain in the Notice of Removal [Doc. 1] why the Court has diversity jurisdiction, BellSouth has met its burden by a preponderance of the evidence. Specifically, BellSouth has provided Initial Disclosures [Doc. 50-1]–submitted by the Plaintiffs after the action was removed–that show it was "more likely than not" that the amount-in–controversy was satisfied for at least one of the Plaintiffs at the time of removal.

As an initial matter, the Court recognizes that it is entirely proper to consider these post-removal Initial Disclosures [Doc. 50-1].  Following the Supreme Court's decision in St. Paul Mercury, 303 U.S. at 293, and the Court of Appeals for the Sixth Circuit's decision in Rogers, 230

10

F.3d at 872, it is clear that courts may not consider post-removal stipulations by a plaintiff that seek to reduce the amount-in-controversy below the jurisdictional requirement. The Court finds, however, that it may consider post-removal statements made by a plaintiff that do not seek to lower the amount-in-controversy. The Initial Disclosures [Doc. 50-1] fall under this category.

Several federal courts have relied upon initial disclosures in this context- i.e., when it is not "facially apparent" from the state complaint that the amount-in-controversy requirement was satisfied at the time of removal. *See* Huck v. Kone, Inc., No. C 10-1845 RS, 2011 WL 311108 (N.D. Cal. Jan. 5, 2011); Johnson v. Con-Way Freight, Inc., No. 4:10CV2167, 2010 WL 4735754, at *1 (N.D. Ohio Nov. 15, 2010) ("Plaintiff's own damages calculations set forth in his initial disclosures support the conclusion that the amount in controversy is satisfied. There, plaintiff calculates his back and front pay damages at $56,673.64. That amount, coupled with recovery of any other form of damages, including attorneys' fees, would easily satisfy the jurisdictional amount required."); Buffington v. Home Depot USA, Inc., No. 10-cv-01933-CMA-KLM, 2010 WL 3307368, at *1 (D. Colo. Aug. 19, 2010); Johnson v. Progressive Specialty Ins. Co., No. A99-573 CV (JWS), 2000 WL 34514099, at *1 (D. Alaska Mar. 7, 2000). The Court of Appeals for the Sixth Circuit has also relied upon initial disclosures to deny motions to remand. Sanford v. Gardenour, 225 F.3d 659, at *3 (6th Cir. 2000) ( unpublished table decision). In Sanford, the plaintiff moved to remand the case after it was removed to federal court based upon diversity jurisdiction. Id., at *1. The plaintiff filed a post-removal stipulation claiming that "the amount they were seeking was less than $75,000." Id., at *2. The Court of Appeals denied the plaintiff's motion, relying upon an initial disclosure in which the plaintiff estimated damages as approximately $500,000. Id. As the court explained:

> We hold that the plaintiffs are estopped from arguing their case is
> worth less than $75,000 by their Rule 26 disclosures. . . . Thus, by

> their own admission, their claim is worth more than the minimum jurisdictional amount. It is obvious from the disclosures that the plaintiffs intended to seek well over the jurisdictional amount in damages. Therefore, the district court did not err in concluding it had jurisdiction over the case.

Id., at *3.

It is important to distinguish between initial disclosures that estimate damages above the amount-in-controversy requirement, and those that seek to reduce it below the jurisdictional requirement. If a plaintiff's initial disclosures–filed after the case was removed–estimated damages below the jurisdictional requirement, that would effectively be a "post-removal stipulation" seeking to reduce the amount-in-controversy below the jurisdictional requirement. Based upon the Supreme Court's decision in St. Paul Mercury, 303 U.S. at 293, and the Court of Appeals for the Sixth Circuit's decision in Rogers, 230 F.3d at 872, the Court would not be able to consider such evidence. Again, the concern is over a plaintiff manipulating subject-matter jurisdiction. Such concern, however, is not present if the initial disclosure–or any other post-removal document–estimated damages *above* the jurisdictional requirement. In the present case, Plaintiffs' Initial Disclosures [Doc. 50-1] estimates damages in *excess* of $75,000, independent of interest and costs.

Plaintiffs' counsel signed the Initial Disclosures [Doc. 501-1] on November 22, 2010, a few months after the case was removed to federal court. [Id., at 10]. One of the sections is titled "Computation of Damages Claimed by Plaintiffs." [Id., at 8-9]. That section provides:

### 3.        Computation of Damages Claimed by Plaintiffs.

A.        Actual Damages

> Plaintiffs have not yet retained expert witnesses to calculate the actual damages they have sustained as a result of Defendants' conduct. Plaintiffs have attempted to estimate their damages, as shown below, using the information currently available to them.

Plaintiffs reserve the right to amend the figures below.  As of the date these disclosures are signed, Plaintiffs estimate their actual damages as follows:

I.      Emotional distress caused by harassing telephone calls to Peter D'Andrea: ($10,000)

ii.     Lost/unproductive work time (wages and lost sales due to busy phone lines) while answering telephone calls from debt collectors (by Plaintiffs and their agents): $5,000.

iii.    Lost sales due to disconnected DSL lines (inability to process debit/credit cards and inability to take internet orders): $15,300
–lost debit/credit card sales (in store): $12,000.
–lost internet orders: $3,300

iv.    **Loss of future customers and business goodwill due to disconnected DSL lines: $100,000.**

v.     Loss of employee morale, goodwill, and employment relationships due to harassing collection calls: $5,000.

vi.    Lost/unproductive work time (wages and lost sales due to busy phone lines) while trying to get DSL service restored (by Plaintiffs and their agents): $1,960.

vii.   Legal fees associated with trying to get DSL service restored: $2,000.00

viii.  Costs of trying to get wrongful collection calls stopped (legal expenses): $4,500.00 (This includes only direct communications with debt collectors by counsel, either in writing or telephone (such as cease and desist letters), not litigation-related fees and expenses.

B.    Statutory damages in an amount not exceeding $1,000.00 against Defendant CISCO, Inc. pursuant to 15 U.S.C. § 1692k(a)(2)(A).

C.    **Reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and/or the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109**.

Attorney fees are estimated as $16,000.00 as of September 30, 2010.  Of this amount, approximately $4,500.00 was incurred in telephone conversations and

correspondence with BellSouth representatives and debt collectors trying to get the collection calls stopped.

D.   **Treble damages pursuant to the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-109.**

[Id.] [emphasis added].

Notably, Plaintiffs request $100,000 in damages for the "[l]oss of future customers and business goodwill due to disconnected DSL lines." [Id., at 9]. Plaintiffs do not explain whether they requested a total amount of $100,000 (to be shared collectively), or whether they each claimed $100,000. In any event, the fact that Plaintiffs requested punitive damages makes it more likely that the amount-in-controversy exceeded the jurisdictional requirement. Punitive damages are included in the amount in controversy, "unless it is apparent to a legal certainty that such cannot be recovered." Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 572 (6ᵗʰ Cir. 1933) (quotations and citation omitted). Treble damages are a form of punitive damages, and are recoverable under the TCPA. *See, e.g.*, Tucker v. Sierra Builders, 180 S.W.3d 109, 115-16 (Tenn. Ct. App. 2005) ("In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article commodity, or thing of value wherever situated . . . The defendant's conduct need not be wilful or even knowing, but if it is, the TCPA permits the trial court to award treble damages.") (citations omitted); T.C.A. § 47-18-109(a)(3) ("If the court finds that the use or employment of the unfair or deceptive act or practice was a willful or knowing violation of this part, the court may award three (3) times the actual damages sustained and may provide such other relief as it considers

14

necessary and proper."). At the time of removal, it was not certain that Plaintiffs would not be entitled to punitive damages if they prevailed on their TCPA claims. Accordingly, the Court may consider Plaintiffs' request for punitive damages in finding that the amount-in-controversy was satisfied.

While attorneys fees are generally not included in the amount-in-controversy determination, courts may consider such requests if attorneys fees are available by statute. *See* <u>Crosby v. Am. Online, Inc.</u>, 967 F. Supp. 257, 261 (N.D. Ohio 1997) (recognizing that statutory attorneys fees are included in the amount-in-controversy). Plaintiffs have requested attorneys fees for both their FDCPA and TCPA claims. Under the FDCPA, the prevailing party is entitled to "a reasonable attorney's fee" and costs. *See* <u>Lee v. Thomas & Thomas</u>, 109 F.3d 302, 307 (6th Cir. 1997); 15 U.S.C. § 1692k(a)(3). Under the TCPA, a court may choose to award attorneys fees to a prevailing plaintiff, but that is solely within the court's discretion. *See* T.C.A. § 47-18-109 ("Upon a finding by the court that a provision of this part [the TCPA] has been violated, the court may award to the person bringing such action reasonable attorney's fees and costs.").

Having reviewed Plaintiffs' Initial Disclosures [Doc. 50-1], the Court finds that BellSouth has shown by a preponderance of the evidence that the amount-in-controversy requirement was satisfied at the time of removal. Plaintiffs' requests for attorneys fees–combined with their request for punitive damages and $100,000 in compensatory damages–makes it "more likely than not" that the amount-in-controversy requirement was satisfied at the time of removal. Because there was complete diversity between the parties, and because it is "more likely than not" that the amount-in-controversy requirement was satisfied at the time of removal, the Court finds that it has diversity jurisdiction over the remaining state law claims. 28 U.S.C. § 1332. Accordingly, Plaintiffs' Motion

to Remand [Doc. 48] is **DENIED**.

**C.    BellSouth's Motion to Strike  [Doc. 44]**

On September 3, 2010, Cisco filed a Motion for Judgment on the Pleadings [Doc. 32].  On January 11, 2011, BellSouth likewise filed a Motion for Judgment on the Pleadings [Doc. 39].  On January 26, 2011, Plaintiffs filed a response to both motions.  [Doc. 41].  On January 31, 2011, BellSouth filed the Motion to Strike [Doc. 44].  BellSouth argues that Plaintiffs' response was untimely, and therefore should be stricken.  [Id.].

Pursuant to Local Rule 7.1, responses to dispositive motions–which certainly includes a motion for judgment on the pleadings–are due twenty-one days after the motion is filed.  While it is true that Plaintiffs' response was filed late as to Cisco's Motion for Judgment on the Pleadings [Doc. 32], that is not the case for BellSouth's motion.  The issue is whether Plaintiffs' response was late in regard to BellSouth's motion.  It was not.

Plaintiffs filed their response to BellSouth's Motion for Judgment on the Pleadings [Doc. 39] within twenty-one days after the motion was filed.  BellSouth is simply not in a position to complain about the filing as it pertains to Cisco.  BellSouth was not prejudiced in any way by Plaintiffs' response [Doc. 41].  Accordingly, BellSouth's Motion to Strike [Doc. 39] is **DENIED**.

**D.    BellSouth's Motion for Judgment on the Pleadings [Doc. 39] and its Motion to Dismiss  [Doc. 51]**

On October 5, 2010, Plaintiffs agreed to dismiss all of their claims against Alliant. [Stipulation of Dismissal as to Alliant, Doc. 38].  In the Stipulation of Dismissal [Doc. 38], Plaintiffs dismissed their "claims against Alliant as set forth in this litigation, *as well as any and all claims against any other party*, including but not limited to parties to this litigation, *which are based solely on Alliant's alleged actions or conduct . . .*"  [Id.] [emphasis added].  After Alliant was dismissed,

16

BellSouth filed a Motion for Judgment on the Pleadings [Doc. 39]. In that motion, which was filed on January 11, 2011, BellSouth requested that the Court dismiss "any purported vicarious responsibility of BellSouth for the Plaintiffs' causes of action under the Fair Debt Collection Practices Act (FDCPA) or the Tennessee Consumer Protection Act (TCPA) against CISCO or Alliant." [Id., at 1]. BellSouth also requested that the Court dismiss any FDCPA or TCPA claims based upon BellSouth's actions. [Id., at 2].

Shortly after BellSouth filed the Motion for Judgment on the Pleadings [Doc. 39], Plaintiffs dismissed their claims against Cisco. [Stipulation of Dismissal as to Cisco, Doc. 47]. In the Stipulation of Dismissal [Doc. 47], Plaintiffs dismissed their claims "against Cisco as set forth in this litigation, *as well as any and all claims against any other party*, including but not limited to parties in this litigation, *which are based solely on Cisco's alleged actions or conduct . . .*" [Id.] [emphasis added]. BellSouth is now the only remaining defendant in this case.

On April 11, 2011, BellSouth filed a Motion to Dismiss [Doc. 51]. In that motion, BellSouth requests that all claims based upon Alliant's or Cisco's alleged actions–that is, any claims based upon vicarious responsibility–be dismissed. [Id.]. BellSouth also requests dismissal of various claims based upon BellSouth's alleged actions. [Id.]. In sum, BellSouth requests that Counts I, II, III (in part), V, and VI of the Amended Complaint [Doc. 10] be dismissed. [Id.].

Count I of the Amended Complaint is titled "Violations of the FDCPA by Cisco and Alliant." [Id., at 5-9, ¶¶ 24-58]. Count I does not allege any claims against BellSouth. [Id.]. Count I defines "debt collectors" as Cisco and Alliant. [Id., at 5, ¶ 25]. Count I also defines "AT&T" as the "creditor," and Mr. D'Andrea and Mr. Hamilton as "consumers." [Id., at 5, ¶ 24, ¶ 26]. Plaintiffs'

claims in Count I are directed only against the alleged "debt collectors."[8]  Because Plaintiffs have

dismissed their claims against Alliant and Cisco [Docs. 38, 47]–the alleged "debt

collectors"–Plaintiffs' claims in Count I are **DISMISSED.**

Count II of the Amended Complaint is titled "Slander of Plaintiffs by the Debt Collectors."

[Plaintiffs' Amended Complaint, Doc. 10, at 9-10, ¶¶ 59-61].  In that Count, Plaintiffs allege that

the "*Debt Collectors* published false and defamatory statements regarding the Plaintiffs with

reckless disregard for the truth of the statements or with negligence in failing to ascertain the truth

of the statements." [Id. at 9-10, ¶ 60] [emphasis added].  Plaintiffs' claims in Count II are directed

only against the alleged "debt collectors."  Because Plaintiffs have dismissed their claims against

Alliant and Cisco [Docs. 38, 47]–the alleged "debt collectors"–Plaintiffs' claims in Count II are

**DISMISSED.**

Count III is titled "Violations of the Tennessee Consumer Protection Act of 1977 by AT&T

and the Debt Collectors."  [Plaintiffs' Amended Complaint, Doc. 10, at 10-11, ¶¶ 62-72].  In that

---

[8]  The FDCPA was passed in 1977 to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  To succeed on a claim under the FDCPA, a plaintiff must show that the money or property being collected qualifies as a "debt."  15 U.S.C. § 1692a(5).  Second, the collecting entity must qualify as a "debt collector."  15 U.S.C. § 1692a(6).  Third, a plaintiff must show that the debt collector violated a provision of the FDCPA, 15 U.S.C. § 1692 *et seq*.

With very few exceptions, "creditors" may not be held liable under the FDCPA.  *See* Montgomery v. Huntington Bank, 346 F.3d 693, 699 (6th Cir. 2007) (recognizing that "a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts") (citing Stafford v. Cross Country Bank, 262 F.Supp. 2d 776, 794 (W.D. Ky. 2003).  The FDCPA defines "creditors" as "any person who offers or extends credit creating a debt or to whom a debt is owed . . ."  15 U.S.C. § 1692a(4).  In the present case, Plaintiff alleges that BellSouth (or AT&T) is a "creditor."  [Amended Complaint, Doc. 10, at 7, ¶ 24].  In addition, Plaintiffs recognize that they "have not alleged any cause of action against BellSouth under the FDCPA."  [Plaintiffs' Memorandum of Law in Opposition to BellSouth's Motion for Judgment on the Pleadings, Doc. 43, at 1].

Count, Plaintiffs seek to hold BellSouth vicariously liable for the alleged acts of Alliant and Cisco.[9]

When Plaintiffs dismissed their claims against Alliant and Cisco [Docs. 37, 48], they also dismissed

claims "against any other party, including but not limited to parties to this litigation, which are based

solely" on Alliant's or Cisco's alleged actions or conduct. In other words, BellSouth cannot be held

vicariously liable for any actions or conduct by Alliant or Cisco. To the extent that Plaintiffs have

asserted TCPA claims against BellSouth based solely upon the actions or conduct of Alliant or

Cisco, those claims are **DISMISSED**.

However, to the extent that Plaintiffs have asserted TCPA claims against BellSouth based

upon BellSouth's alleged actions, those claims are **NOT DISMISSED**.[10] In its Motion to Dismiss

[Doc. 51], BellSouth states that it does not seek dismissal of the TCPA claims based upon

BellSouth's alleged actions. [Id., at 2].

Count IV is titled "Breach of Contract." [Plaintiffs' Amended Complaint, Doc. 10, at 11,

---

[9] In Count III, Plaintiffs allege that the "debt collectors" were "acting as agents of AT&T in their attempts to collect the Wallace Debt by disparaging Plaintiffs' personal and business activities; as a result, AT&T is liable for the Debt Collectors' violations of the TCPA." [Plaintiffs' Amended Complaint, Doc. 10, at 10, ¶ 64].

[10] In the Motion for Judgment on the Pleadings [Doc.39], BellSouth requests that the Court dismiss any claims based upon the alleged actions of Alliant or Cisco. However, BellSouth also requests that the Court dismiss any TCPA claims based upon any alleged actions of BellSouth. [Id.]. Specifically, BellSouth requests that "Plaintiffs' TCPA cause of action, whether it be against CISCO and BellSouth vicariously or against BellSouth individually, must be dismissed." [BellSouth's Memorandum in Support of its Motion for Judgment on the Pleadings, Doc. 40, at 5].

However, in its Motion to Dismiss [Doc. 51], BellSouth states that it does not seek dismissal of Count III in its entirety. Specifically, BellSouth states that it only seeks dismissal of the TCPA claims based solely upon the alleged actions or conduct of Alliant or Cisco. [Id., at 2]. BellSouth states that it does not seek dismissal of Count III to the extent that Plaintiffs have a "cause of action against AT&T and/or BellSouth under Count 3 directly under the Tennessee Consumer Protection Act . . ." [Id.].

Based upon the Motion to Dismiss [Doc. 51]–which was filed months after the Motion for Judgment on the Pleadings [Doc. 39]–it appears that BellSouth has abandoned its request for dismissal of Count III in its entirety.

¶¶ 73-74]. In this Count, Plaintiffs have alleged claims only against BellSouth. [Id.]. In its Motion to Dismiss [Doc. 51], BellSouth states that it does not seek dismissal of Plaintiffs' breach of contract claims. [Id., at 2]. Accordingly, Plaintiffs' claims in Count IV are **NOT DISMISSED**.

Count V is titled "Tortious Interference with Business Relationships by the Debt Collectors." [Plaintiffs' Amended Complaint, Doc. 10, at 11-12, ¶¶ 75-78]. Plaintiffs' claims in Count V are directed only against the alleged "debt collectors" – i.e. Alliant and Cisco. [Id.]. Plaintiffs have not alleged any claims against BellSouth. Based upon the dismissals of Alliant and Cisco [Docs. 38, 47], Plaintiffs' claims in Count V are **DISMISSED**.

Count VI is titled "Tortious Interference with Business Relationships by AT&T." [Plaintiffs' Amended Complaint, Doc. 10, at 12-13, ¶¶ 79-86]. Plaintiffs' claims in Count VI are directed only against BellSouth. [Id.]. In its Motion to Dismiss [Doc. 51], BellSouth states that it does not seek dismissal of Plaintiffs' claims in Count VI. [Id., at 2]. Accordingly, Plaintiffs' claims in Count VI are **NOT DISMISSED**.

## II. CONCLUSION

Based upon the foregoing, the Court makes the following rulings:

- Plaintiffs' Motion for a Hearing Regarding the Motion to Remand [Doc. 52] is **DENIED**.

- Plaintiffs' Motion to Remand [Doc. 48] is **DENIED.**

- BellSouth's Motion to Strike [Doc. 44] is **DENIED**.

- BellSouth's Motion for Judgment on the Pleadings [Doc. 39] and its Motion to Dismiss [Doc. 51] are **GRANTED**. Accordingly, Counts I, II, V, and VI of the Amended Complaint [Doc. 10] are **DISMISSED**. Count III is also dismissed, to the extent that Plaintiffs seek to hold BellSouth liable for alleged actions or conduct by Alliant or Cisco.

**IT IS SO ORDERED.**

**ENTER:**

_____s/ Thomas W. Phillips_____
United States District Judge